**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID VAUGHN GRIER,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-3855** |
| | : | |
| **R.A. CAVALARI, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**YOUNGE, J.** **SEPTEMBER 25, 2026**

Plaintiff David Vaughn Grier, an inmate incarcerated at SCI Phoenix, initiated this civil rights action by filing a *pro se* Complaint seeking declaratory and injunctive relief, as well as monetary damages. (ECF No. 3.) Grier subsequently filed an Amended Complaint ("Am. Compl." (ECF No. 17)), which is the governing pleading in this case.[1] Presently before the Court is Defendants' Motion to Partially Dismiss (ECF No. 42 ("Motion")) and Grier's Response in Opposition (ECF No. 50 ("Response")). For the following reasons, the Court will grant the motion in part and deny it in part.

[1] *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (explaining that "an amended pleading supersedes the original pleading," meaning "the most recently filed amended complaint becomes the operative pleading"); *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) ("[L]iberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings."). The Court notes that Grier refiled his Amended Complaint on January 28, 2026. (ECF No. 24.) Because the Amended Complaint filed at ECF No. 24 is a duplicate of the Amended Complaint filed at ECF No. 17, the Amended Complaint filed at ECF No. 24 will be stricken.

## I. FACTUAL ALLEGATIONS[2]

Grier asserts several claims based on a June 23, 2025, altercation he had with another inmate, Kenneth Lewis, in a common area at SCI-Phoenix. Named as Defendants are: (1) R.A. Cavalari, identified in the Amended Complaint as a Correctional Officer; (2) J. Neally, identified as the Unit Manager of L Block; (3) J. Gery, identified as a counselor of L Block; (4) L. Durand, identified as the Corrections Classification Program Manager ("CCPM"); (5) N. Wynder, identified as the Deputy Secretary Facility Manager of L Block; (6) C. Hensley, identified as "DCSC;"[3] (7) John Doe I, identified as a Captain; (8) J. Terra, identified as the Superintendent of SCI Phoenix; (9) Mike Wenerowitz, identified as an Executive Deputy Secretary for Institutional Operations ("EDSI"), (10) Dave Radziewicz, identified as a Special Assistant to the Secretary of the Pennsylvania Department of Corrections ("DOC"); (11) Heather Fotiou, identified as a Special Assistant to the EDSI; (12) Erin Brown, identified as the Director of Population Management; (13) Morris Houser, identified as the Regional Deputy Secretary of the Eastern District of Pennsylvania; (14) John Doe II and (15) John Bickell, who are both identified as EDSI; (16) Dr. L.R. Harry, identified as the Secretary of the DOC; and (17) Kenneth Lewis, identified as an inmate. (Am. Compl. at 2-5.) With the exception of Lewis, Grier named each Defendant in his or her official and individual capacities. (*Id.*) He alleges that Defendants Neally, Gery, Durand, Wynder, and Hensley are members of the Program Review Committee

---

[2] The factual allegations set forth in this Memorandum are taken from Grier's Amended Complaint (ECF No. 17). The Court adopts the sequential pagination assigned by the CM/ECF docketing system. Where appropriate, grammar, spelling, and punctuation errors in Grier's pleading will be corrected for clarity. The Court may also consider matters of public record. *See e.g., Medina v. Allentown Police Dep't,* No. 23-2055, 2023 WL 7381461, at *2 (3d Cir. Nov. 8, 2023) (*per curiam*) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)).

[3] Grier does not identify what this acronym stands for.

("PRC"). (*Id.* at 3-4.) He alleges that Defendants Terra, Wenerowitz, Radziewicz, Fotiou, Brown, Doe II, and Bickell are members of the reviewing team for the Restricted Release List ("RRL"). (*Id.* at 4-5.)

At approximately 5:00 p.m. on June 23, 2025, Lewis allegedly told Grier "to be on alert stating: 'Don't make me f*** you up.'" (*Id.* ¶ 25.) Grier avers that Cavalari was the only corrections officer nearby at the time, sitting a few feet away from Lewis. (*Id.* ¶ 26.) Grier claims that Lewis became hostile and told Grier to "slide in his cell," a phase that means "engaging in violent behavior surreptitiously." (*Id.* ¶¶ 27-28.) After Lewis repeated this phrase four times, Grier "loudly proclaimed: 'This is what I'm going to do; I'm going to my cell.'" (*Id.* ¶¶ 29-30.) Cavalari then admonished Grier, leading Grier to believe that Cavalari was aware of his and Lewis's actions. (*Id.* ¶ 31.) Cavalari did not tell them to separate or stop talking. (*Id.* ¶ 34.)

Grier walked towards his cell, but decided not to enter it, so that he could remain in Cavalari's line of sight. (*Id.* ¶ 32.) Grier and Lewis then had a "loud and visually fla[m]boyant [quarrel]," following which Grier "attempted to diffuse the tenson through humor" by telling Lewis about "the futility of violence." (*Id.* ¶¶ 36-37, 39.) He also allegedly made "flagrant hand gestures to signal duress" to Cavalari. (*Id.* ¶ 38.) However, Lewis allegedly "remained determined to fight striking a boxer's pose." (*Id.* ¶ 39.) After Grier "put his hands down in a peaceful act," Lewis "unleash[ed] a barrage of unprovoked strikes to [Grier]'s face." (*Id.* ¶ 40.) Cavalari gave an order to desist but did not call for backup or make an "attempt to pull Lewis off of [Grier]." (*Id.* ¶¶ 41-42.) Grier claims that despite the order to desist, Lewis continued to attack by throwing him to the ground and bashing his head onto the concrete floor. (*Id.* ¶ 43.) Cavalari then allegedly deployed oleoresin capsicum ("OC") spray directly onto Grier's face.

(*Id.* ¶ 44.) Grier claims that he "could not protect himself as he was blinded by Cavalari." (*Id.* ¶¶ 45-46.) Lewis, however, continued to "unleash a blitzkrieg of strikes" because the OC spray was not directed at him. (*Id.* ¶ 47.)

Grier contends that Cavalari did not try to restrain Lewis even though Cavalari has "an obvious size advantage . . . [and] could have easily utilized his mass and leverage to dismount Lewis from [him]."[4] (*Id.* ¶¶ 48-50, 54.) A "wandering guard" witnessed the assault, called for help, and "only then did back-up rush in to restrain Lewis, pulling [Grier] to safety." (*Id.* ¶ 53.) Grier was taken to the medical department, diagnosed with a concussion, and then moved to the infirmary unit.[5] (*Id.* ¶ 56.) Grier later "self-discharged against doctor's wishes" even though he allegedly continued to have symptoms. (*Id.* ¶ 57.)

Grier contends that Cavalari issued a false misconduct report indicating that he started the altercation with Lewis. (*Id.* ¶¶ 60-61.) Grier alleges that he did not participate in the altercation and maintains that he "did not defend himself," because he was previously "told directly from the DOC administrative staff – being Houser, Wenerowitz, Radziewicz, Fotiou, Brown, Terra, Bickell, and Doe II" that he "was not, and is not, allowed to defend himself" and "must rely on officers for protection." (*Id.* ¶¶ 45, 52, 61.) Grier was cleared of the misconduct, and Lewis was "sentenced to 30 days" for his role in the altercation, but Lewis allegedly did not lose any recreation or electronics privileges. (*Id.* ¶¶ 62-63.) In the aftermath of the altercation, Lewis allegedly continued to threaten Grier, "proclaim[ing] openly that he will 'murder'" Grier. (*Id.* ¶¶

[4] Grier alleges that Calavari was an "approximately 6'00", 280+ pound, 25-year-old male who was a former linebacker" while Lewis was a "severely mentally ill" 55-year-old male who was "approximately 5'8", 180+ pound[s]." (Am. Compl. at 7-8.)

[5] Grier alleges that he was provided a "wet toilet paper wipe" to clear off the OC spray and blood from his face, but was not offered a "shower, clothes or decontamination until the 26 of June." (Am. Compl. at 8.)

64, 76.) Grier claims that he informed Defendants Terra, Neally, Gery, Hensley, Durand, and Wynder of Lewis's "proclamation to strike again in the future," but they "placed no formal separation" between him and Lewis and, instead, allegedly formed a conspiracy to fuel "Lewis's conquest for murder" by rewarding Lewis for his acts of violence. (*Id.* ¶¶ 76-77, 79, 83, 85.)

Grier alleges that he has been in segregation since August 15, 2025, averring that he was placed there by Bickell and Terra because he killed his cellmate "in self-defense" in May 2022.[6] (*Id.* ¶ 67.) Grier contends that in June 2024, the "first RRL team" consisting of Terra, Wenerowitz, Radziewicz, Fotiou, and Brown "openly ordered and alluded that [Grier] was eternally forbidden to use any form of violence" that included the use of self-defense. (*Id.* ¶ 68.) The "second RRL team" consisting of Terra, Houser, and Doe II, have also advised Grier against the use of self-defense. (*Id.* ¶ 69.) Grier claims that because "[n]o acknowledgement of self-defense was ever given at any hearing," he's been wrongly confined in "one of the most violent blocks in the DOC." (*Id.* ¶¶ 70-72, 86.) Grier contends that Harry and the forgoing RRL Defendants have deprived him of his right to self-defense while keeping him in an "atypically violent setting." (*Id.* ¶¶ 87-90.)

Grier asserts an Eighth Amendment failure to intervene claim against Cavalari contending that Cavalari "put forth no action to intervene" in the "attempt at murder." (*Id.* ¶¶ 92, 143.) Grier also alleges that Cavalari issued a false misconduct report and used excessive force by directing the OC spray at him instead of Lewis. (*Id.* ¶¶ 97, 122, 139.) He claims that Lewis "openly bragged that Cavalari" apologized to Lewis, allegedly telling Lewis that he wasn't trying

[6] Public dockets reflect that Grier has been charged in the Court of Common Pleas of Cumberland County with criminal homicide for an offense that occurred on May 4, 2022. *See Commonwealth v. Grier*, CP-21-CR-0002147-2022 (C.P. Cumberland). A pre-trial conference is currently scheduled for October 27, 2026. *Id.*

to spray him. (*Id.* ¶ 98.) Grier also asserts the following claims: (1) deliberate indifference against Defendants Neally, Gery, Wynder, Hensley, Durand, Doe I, and Terra, because they failed to separate him from Lewis after the altercation despite Lewis's threats that he intended to "murder" Grier in the future (*id.* ¶¶ 73-85, 93-95, 141, 144, 146, 150); (2) due process violations because Grier has been deprived of his right to self-defense and has been held in segregation (*id.* ¶¶ 99-101, 147-150, 152); and (3) violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") against Nelly, Gery, Wynder, and Hensley because they have conspired against Grier on account of his "idiosyncrasies stemming from his mental health" (*id.* ¶¶ 102, 142). Finally, Grier asserts state law claims of negligence, assault, battery, defamation, and "outrage." (*Id.* ¶¶ 140, 145-146, 151, 153-154, 156.) Grier also alleges that "blame falls on the jail as a whole pursuant to respondeat superior." (*Id.* ¶¶ 119, 130.) He seeks monetary damages in an unspecified amount, as well as declaratory[7] and injunctive relief.[8] (*Id.* at 21.)

## II. PROCEDURAL HISTORY

In conjunction with his request for injunctive relief, Grier filed a Memorandum of Law in support of his Motion for a Temporary Restraining Order and Preliminary Injunction. (ECF No. 4.) Grier averred that he was "suffering from an open plot of murder against his life" by Lewis.

---

[7] To the extent Grier seeks a declaration that the Defendants violated his rights in the past, his requests are improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").

[8] Grier seeks an injunction ordering Terra and Harry to "[i]ssue an immediate separation" between himself and Lewis. (Am. Compl. at 21.) According to the Pennsylvania Department of Corrections Inmate Locator, Lewis is currently incarcerated at SCI Greene. Because Lewis is no longer incarcerated at SCI Phoenix, Grier's request for immediate separation is moot.

(*Id.* at 1.) The Court granted Grier leave to proceed *in forma pauperis* on September 19, 2025. (ECF No. 13.) By Memorandum and Order dated October 14, 2025, the Court denied Grier's request for injunctive relief and a restraining order. (ECF Nos. 18, 19.) The Court determined that because Grier failed to establish that his risk of being murdered was imminent and/or probable, he failed to demonstrate irreparable harm. (ECF No. 18 at 6.) The Court also found that Grier's litigation strategy demonstrated that he had more interest in utilizing this lawsuit to extract a monetary payment from Defendants, and little to no concern regarding an alleged murder plot. (*Id.*)

By Order dated January 14, 2026, the Court dismissed Grier's ADA and RA claims with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim because neither Title II of the ADA nor the RA provide for individual liability.[9] (*See* ECF No. 23.) The Court also dismissed all official capacity claims seeking monetary damages as barred by the Eleventh Amendment. (*Id.*) The Court directed service of the Amended Complaint, and all Defendants have been served except for the unidentified Doe Defendants.

The "Commonwealth Defendants"—Cavalari, Neally, Gery, Durand, Wynder, Hensley, Terra, Wenerowicz, Radziewiez, Fotiou, Brown, Houser, Bickell, and Harry—moved to partially dismiss the claims against them. (ECF No. 42 ("Motion").) Defendants seek the dismissal of all claims except for the Eighth Amendment failure to intervene and excessive force claims against Cavalari. (*Id.*) Grier filed a response to the Motion. (ECF No. 50 ("Response").) Below, the Court will address the issues raised by the Motion.

---

[9] In any event, the ADA and RA claims lacked merit because the allegations in the Amended Complaint do not establish that any actions here were taken based on an alleged disability nor do they suggest that the Defendants failed to accommodate an alleged disability.

## III. STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Peters v. Brown,* 793 F. App'x 118, 123 (3d Cir. 2019) (*per curiam*) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (citation modified) (*abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d

Cir. 2024)). The Court affords a liberal construction to factual allegations when a complaint is filed by a self-represented litigant, *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021), particularly where the *pro se* litigant is imprisoned, *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013). "When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim." *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016) (citation omitted). Additionally, since Grier is proceeding *in forma pauperis*, the Court is statutorily authorized to independently screen his Amended Complaint and dismiss it "at any time" pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) if, among other things, it fails to state a claim. *Brown v. Sage*, 941 F.3d 655, 662 (3d Cir. 2019) (*en banc*) ("To repeat, the statute requires a court to dismiss an IFP complaint 'at any time' if it determines that the complaint is frivolous, malicious, or fails to state a claim."). The standard under this screening provision is the same standard that governs a dismissal under Rule 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

## IV. DISCUSSION

Grier brings claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). He also brings tort claims under state law.

### A. Dismissal of Due Process Claims

Grier asserts that Harry, Bickell, Houser, and the RRL teams, consisting of Terra, Wenerowitz, Radziewicz, Fotiou, and Brown (*see* Am. Compl. at 4-5), deprived him of substantive and procedural due process by restricting, ignoring, and condemning "all laws and

actions of self-defense."[10] (Am. Compl. at ¶¶ 99-100, 147-149.) He also avers that he has been held in segregation since August 15, 2025, having been placed there by Bickell and Terra because he killed his cellmate "in self-defense." (*Id.* ¶¶ 67, 101.) He claims that because "no acknowledgement of self-defense was given at any hearing," he's been placed "in the most violent setting," and Defendants have refused to place him in general population. (*Id.* ¶¶ 70, 101, 127.) The Court can discern no claim that rises to the level of a due process violation.[11]

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. As a threshold matter, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first

[10] Grier also avers that Defendants' "actions of voiding [him] of having self-defense rights in prison" violates his due process rights under the Pennsylvania Constitution. (Am. Compl. ¶ 152.) "Pennsylvania does not recognize a private right of action for damages in a lawsuit alleging a violation of the Pennsylvania Constitution." *Moss v. Pennsylvania*, 838 F. App'x 702, 708 (3d Cir. 2020) (*per curiam*) (citing *Jones v. City of Philadelphia*, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006) ("[N]either Pennsylvania statutory authority nor appellate case law has authorized the award of money damages for violation of the Pennsylvania Constitution.")); *see also Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (*per curiam*) ("Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state constitution."); *Spriggs v. Salamon*, No. 23-1756, 2024 WL 5239879, at *6 (E.D. Pa. Dec. 27, 2024) (same, collecting non-precedential decisions of the United States Court of Appeals for the Third Circuit). As there is no private right of action for damages under the Pennsylvania Constitution, this claim is not plausible. *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution").

[11] To the extent that Grier asserts a due process claim against Cavalari by alleging that he issued a false misconduct report (Am. Compl. ¶¶ 60-62, 122), his allegations do not rise to the level of a due process violation. "[T]he filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process," *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*), because "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports," *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."). Because Grier was later cleared of the misconduct, any claim based on the issuance of a false report is not plausible. (Am. Compl. ¶ 62.)

instance for a procedural due process claim to lie." *Mudric v. Att'y Gen.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)). Several courts, including the United States Court of Appeals for the Third Circuit, have concluded that there is no federal constitutional right to self-defense while incarcerated. *See Rowe v. DeBruyn*, 17 F.3d 1047, 1052-53 (7th Cir. 1994) ("Next, we consider if the right to self-defense is a fundamental constitutional right within the Due Process Clause itself. We conclude that it is not."), *cert. denied,* 513 U.S. 999 (1994); *Williams v. Kort*, 223 F. App'x 95, 100 (3d Cir. 2007) (*per curiam*) (agreeing with *Rowe* that prisoners do not have a constitutional right to self-defense); *Scruggs v. Jordan*, 485 F.3d 934, 937, 939 (7th Cir. 2007) (re-affirming and extending *Rowe* to defense of others); *Nielsen v. Sexton*, 168 F.4th 968, 995 (7th Cir. 2026) ("[U]nder this Court's precedent, an inmate lacks a constitutional right to use force in self-defense, even to defend herself against a violent rape."), *rehearing denied*, No. 23-3060, 2026 WL 853117 (7th Cir. Mar. 26, 2026); *Shakur v. McNeil*, No. 20-708, 2020 WL 4818906, at *9 (D. Conn. Aug. 17, 2020) (finding no right to self-defense in prison disciplinary proceeding); *Muhammad v. Commonwealth of Va.*, No. 14-529, 2016 WL 1071039, at *3 n.6 (W.D. Va. Mar. 17, 2016) (same); *Townsend v. Warden, FCC Lewisburg*, No. 12-0636, 2013 WL 371930, at *9 (M.D. Pa. Jan. 30, 2013) ("Inmates do not have a constitutional right to raise self-defense as a defense in the context of prison disciplinary proceedings." (citation omitted)); *Roles v. Armfield*, No. 12-363, 2012 WL 6019141, at *2-3 (D. Idaho Dec. 3, 2012) (same); *Sack v. Canino*, No. 95-1412, 1995 WL 498709, at *1 (E.D. Pa. Aug. 21, 1995) (same).

In *Rowe*, the Seventh Circuit explained that courts owe prison administrators deference in implementing policies, and that "[a] right that threatens to undermine prison discipline by encouraging inmates to combat violence with more violence subverts a core prison function of

ensuring order and safety within the institution." 17 F.3d at 1052-53. The court concluded that the no self-defense policy "acts as a didact by warning prisoners that violence against another inmate is a unilaterally condemned and perpetually sanctionable violation of prison rules. It also acts as a deterrent because a prisoner who is caught fighting cannot reliably exculpate himself later with a claim of self-defense." *Id.* at 1053. Accordingly, because Grier has no federal constitutionally protected liberty interest in self-defense, any due process violation based on Defendants' actions that allegedly led to a deprivation of "all laws and actions of self-defense" necessarily must fail and will be dismissed.

Moreover, to the extent Grier asserts a due process violation because he's been "held in segregation," placed "in the most violent setting," or that Defendants have refused to place him in general population due to lack of "acknowledgement of self-defense," it is well settled that prisoners have no inherent constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (stating that the United States Constitution itself does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement). However, a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations in some circumstances. *Id.* at 222. When considering whether a liberty interest is implicated in the context of prison regulations, a court's focus must be on the "the nature of the deprivation" experienced by the prisoner. *Sandin v. Conner*, 515 U.S. 472, 481 (1995). "States may under certain circumstances create liberty interests which are protected by the Due Process Clause, . . . [b]ut these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483-84 (citations omitted). "[I]nmates are generally not

entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011) (citing *Sandin*, 515 U.S. at 493-84). As the United States Supreme Court has explained, "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. *Sandin*, 515 U.S. at 485. Thus, "confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith*, 293 F.3d at 653 (citing *Sandin*, 515 U.S. at 486).

"In deciding whether a protected liberty interest exists under *Sandin*, [a court] . . . consider[s] the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions." *Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003) (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). Although prolonged periods of indefinite solitary confinement can be sufficient to trigger a due process interest, *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 574-575 (3d Cir. 2017) (recognizing "a due process right to be free from indefinite conditions of solitary confinement"); *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (holding that eight years in administrative custody in solitary confinement was atypical and significant), allegations similar to Grier's have been found insufficient, *see Wilkerson v. Goodwin*, 774 F.3d 845, 855 (5th Cir. 2014) ("[T]he duration in segregated confinement that courts have found does not give rise to a liberty interest ranges up to two and one-half years."); *Fraise v. Terhune*, 283 F.3d 506, 522-23 (3d Cir. 2002) ("Although inmates who are transferred to the STGMU [Security Threat Group Management Unit] face additional restrictions, we hold that the transfer to the STGMU does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life."); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997)

(holding that "exposure to the conditions of administrative custody for periods as long as 15 months falls within the expected parameters of the sentence imposed [. . .] by a court of law" and does not constitute a due process violation (quotation omitted)). Accordingly, the Defendants' Motion to Dismiss will be granted on this point, and Grier's due process claims based on his time spent in segregation, approximately thirteen months, will be dismissed.

**B. Dismissal of Deliberate Indifference Claims**

Grier asserts deliberate indifference claims against Defendants Neally, Terra, Gery, Durand, Wynder, Hensley, Houser, and RRL members, Wenerowitz, Radziewicz, Fotiou, Brown, Bickell, and Harry. Defendants move to dismiss Grier's failure-to-protect claims, contending that he has failed to state how any of the Defendants "were aware that Lewis was going to harm [Grier]; let alone that they knew of and disregarded an excessive risk to [Grier's] health or safety." (Motion at 11.) While Defendants appear to have interpreted Grier's Amended Complaint as asserting only a claim that Defendants failed to protect Grier prior to the June 23, 2025 altercation with Lewis,[12] it is clear that Grier also asserts a failure to protect claim based on events that occurred following the altercation.[13] Grier specifically avers in his

[12] Defendants contend that Grier has failed to allege that they were aware of any underlying threat posed by Lewis prior to the altercation. In their Motion, Defendants interpret Grier's allegations as asserting that there were "no changes to staff" and no separation agreement "in place **prior** to the alleged assault." (Motion at 11-12.) (emphasis added).

[13] Grier asserts that in the aftermath of the altercation, Lewis continued to threaten him, "proclaim[ing] openly that he will 'murder'" Grier. (Am. Compl. ¶¶ 64, 76.) Grier informed Defendants Terra, Neally, Gery, Hensley, Durand, and Wynder of Lewis's "proclamation to strike again in the future," but they "placed no formal separation" between him and Lewis and, instead, allegedly formed a conspiracy to fuel "Lewis's conquest for murder" by rewarding Lewis for his acts of violence. (*Id.* ¶¶ 76-77, 79, 83, 85.) There are additional allegations in the Amended Complaint that demonstrate Grier's intention to assert deliberate indifference claims following the initial altercation. (*See id.* ¶ 80 (Lewis has "openly bragged" to others that "staff has . . . proclaimed Lewis was in the right . . . in the weeks that **proceeded** the assault" (emphasis added)); ¶ 82 (alleging that certain staff members "did nothing to curt the open

Response that "[i]t is not the knowledge of an assault that violated [his] [rights] but the knowledge of future assaults and harm threatened that was disregarded by the defendants." (Response at 7-8.) Because Defendants do not seek dismissal of the failure to protect claims asserted by Grier regarding events that occurred after the June 23, 2025 altercation, those claims will proceed to discovery as to Defendants Terra,[14] Neally, Gery, Hensley, Durand, and Wynder.[15] For the following reasons, the Court will dismiss Grier's deliberate indifference claims to the extent he alleges that Defendants failed to protect him prior to the June 23, 2025 altercation.

The Eighth Amendment is violated when prison officials act with deliberate indifference to a serious risk that a prisoner will suffer harm, meaning they must know of and disregard an excessive risk to the prisoner's safety. *See Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994) (internal quotation and citation omitted); *Beers-Capitol v. Whetzel*, 256 F.3d 120, 135 (3d Cir. 2001). Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer*, 511 U.S. at 833). However, not "every injury suffered by one prisoner at the hands of another . . . translates

---

agreement of allowing **further** attack" (emphasis added)); ¶ 105 ("Lewis continues to threaten death, as he did during the assault"). Grier also avers in his Response that he "told each defendant directly of the continuous bombardment of threats made by Lewis **after** the assault." (*See* Response at 7 (emphasis added).)

[14] Defendants move to dismiss Grier's claims against Defendant Terra, contending that Grier has failed to demonstrate Terra's personal involvement. (Motion at 9-10.) Because Grier avers that he told Terra about the murder threats made by Lewis following the June 23, 2025 altercation (*see* Am. Compl. ¶ 76, 78), Grier's deliberate indifference claims will proceed as to Defendant Terra.

[15] Grier alleges that he informed these Defendants about Lewis's "murder proclamation." (Am. Compl. ¶¶ 76-77.) Because there are no allegations that Grier informed any other Defendants about the alleged threats made by Lewis following the June 23, 2025 altercation, the Court will dismiss Grier's deliberate indifference claims against Defendants Houser, Wenerowitz, Radziewicz, Fotiou, Brown, Bickell, and Harry.

into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. To state a plausible failure to protect claim, a prisoner must allege that: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) prison officials acted with deliberate indifference to that substantial risk of serious harm; and (3) the officials' deliberate indifference caused harm. *See Farmer*, 511 U.S. at 834; *Hamilton*, 117 F.3d at 746; *see also Travillion v. Wetzel*, 765 F. App'x 785, 790 (3d Cir. 2019) (*per curiam*). Deliberate indifference in the context of a failure to protect claim is a subjective standard that requires the plaintiff to allege plausibly that the defendant prison officials "must actually [have been] aware of the existence of the excessive risk; it is not sufficient that [prison officials] should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

Grier does not allege facts to state a plausible claim that any Defendants knew that Lewis posed a substantial risk of harm to him before the June 23, 2025 altercation occurred. There are no allegations that, prior to the altercation, Lewis had threatened Grier's safety or placed him in any danger, or that Grier had informed any named Defendant of any danger prior to the altercation. *See Keeling v. Wetzel*, No. 23-2045, 2024 WL 3770307, at *3 (3d Cir. Aug. 13, 2024) (*per curiam*) ("We agree with the District Court that Keeling's amended complaint does not suggest that the defendants 'acted or failed to act despite [their] knowledge of a substantial risk of serious harm.'" *Farmer*, 511 U.S. at 842. His allegations do not indicate that his cellmate made specific threats of serious harm, describe a history of physical conflict with that cellmate, or otherwise suggest that a substantial risk of being attacked by his cellmate was 'longstanding, pervasive, well-documented or expressly noted by prison officials in the past . . .'"). Nor has Grier plausibly alleged that Defendants were deliberately indifferent to his safety based on his generalized allegations that he was housed on dangerous units without a right to

self-defense. Accordingly, because Grier has failed to state a plausible failure to protect claim against any Defendants with respect to their actions taken, or lack thereof, prior to the June 23, 2025 altercation, the Court will grant Defendants' Motion on this basis. However, Grier's claims based on allegations that Defendants Terra, Neally, Gery, Hensley, Durand, and Wynder were deliberately indifferent following the altercation will proceed.

### C. State Law Claims

#### 1. Negligence

Grier contends in conclusory fashion that Defendants Terra, Neally, Gery, Hensley, Durand, and Wynder "were negligent" by "taking no actions to curt the danger that was presented through the actions" of Lewis and "staff's appraisal of Lewis's actions." (Am. Compl. ¶¶ 111, 146.) He also claims that Defendants Bickell, Harry, Houser, Terra, Wenerowitz, Radziewicz, Fotiou, Brown, and "all others on the RRL team" were "negligent in their deprivation of [his] state statutorial right to self-defense." (*Id.* ¶¶ 112, 151.)

"For a party to prevail in a negligence action . . . the plaintiff must establish the defendant owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages." *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (Pa. 2009). Grier has not stated a plausible negligence claim against any of these Defendants. Grier fails to state how any of these defendants breached a duty of care owed to him and that the breach caused his injuries. Consequently, the Court will dismiss the negligence claims brought against these Defendants.[16]

[16] Defendants move for dismissal of Grier's negligence on sovereign immunity grounds. By statute, Pennsylvania law provides the Commonwealth, its agencies, officials and employees acting in the scope of their duties with sovereign immunity from damages claims. *See* 1 Pa.

**2. Defamation**

Grier contends that "staff" has referred to him as a "serial murderer" and a "serial rapist." (Am. Compl. ¶ 115.) He claims in conclusory fashion that the "[s]taff's group construction of [s]lander has engendered an overtly unsafe environment" for him "where death can be a likely result of such slander." (*Id.* ¶ 118.) Because Grier has failed to identify any of the named Defendants in the alleged defamatory actions, these claims will be dismissed.[17] Where there are

---

Cons. Stat. § 2310 (establishing immunity for Commonwealth officials and employees); 42 Pa. Cons. Stat. § 8521 (limiting waiver of immunity to specific exceptions); *id.* § 8522 (setting forth limited exceptions); *see also Page v. Rogers*, 324 A.3d 661, 678-79 (Pa. Commw. Ct. 2024) ("Generally, the Commonwealth and its agencies, officials[,] and employees acting within the scope of their duties are immune from suits for damages." (quotation marks, emphasis, and citation omitted)). Subject to nine specific statutory exceptions contained in 42 Pa. Cons. Stat. § 8522(b), the Commonwealth's sovereign immunity generally bars state law claims against Commonwealth employees for negligence or intentional torts while acting within the scope of their duties. *See Poteat v. Lydon*, No. 22-2114, 2023 WL 6620368, at *3 (3d Cir. Oct. 11, 2023) (*per curiam*) ("State sovereign immunity bars these suits against the Commonwealth and its employees acting within the scope of their duties, as the PSP employees were, and the limited negligence exceptions to sovereign immunity do not apply as Poteat alleged only intentional torts."); *McHugh v. Pa. Dep't of Corr.*, No. 25-5799, 2026 WL 1862556, at *6 (E.D. Pa. Jun. 26, 2026) (citing *Taalibuddeen v. Walmart, Inc.*, No. 22-1354, 2026 WL 972896, at *10 (M.D. Pa. Apr. 10, 2026)). Because Grier's state law claims do not fall within any of the recognized exceptions, the Commonwealth Defendants are also entitled to immunity on the negligence claims to the extent that they were acting within the scope of their employment.

[17] Grier has also failed to allege any of the elements that are required to plausibly assert a defamation claim. Under Pennsylvania law, a claim for defamation includes the following elements:

> (1) The defamatory character of the communication.
> (2) Its publication by the defendant.
> (3) Its application to the plaintiff.
> (4) The understanding by the recipient of its defamatory meaning.
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.

*Graboff v. Colleran Firm*, 744 F.3d 128, 135 (3d Cir. 2014) (citing *Tucker v. Fischbein,* 237 F.3d 275, 281 (3d Cir. 2001)). A statement is defamatory if "it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Thomas Merton Ctr. v. Rockwell Int'l Corp.,* 442 A.2d 213,

multiple events and defendants at issue, alleging personal involvement often cannot be accomplished by repeatedly and collectively referring to the "Defendants" as a group without clarifying the specific basis for each Defendant's liability. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (agreeing with the district court that the repeated and collective use of the word "Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged'"); *Walker v. Wetzel*, No. 22-1357, 2022 WL 4103632, at *3 (3d Cir. Sept. 8, 2022) (*per curiam*) (affirming district court's conclusion that generalized reference to "medical staff and officers" did not allege personal involvement).

**3. Assault and Battery Against Defendant Cavalari**

The Defendants also move for dismissal of Grier's state tort claims of assault and battery against Cavalari. With respect to these claims, Defendants' motion assumes that Cavalari was acting in the scope of his employment as a corrections officer during the events in question. (Motion at 14.) Grier responds that Cavalari acted outside the scope of his official duties by causing harm to an "uncombative party." (Response at 9.) Although Commonwealth employees are entitled to sovereign immunity for intentional torts, "intentional conduct may fall within, or outside, the scope of a state employee's duties, depending on the circumstances." *Sutton v. Bickell*, 220 A.3d 1027, 1035 (Pa. 2019). The scope of employment inquiry is "fact-intensive," and may only be decided by the court when "neither the facts nor the inferences to be drawn from them are in dispute." *Justice v. Lombardo*, 208 A.3d 1057, 1060, 1068 (Pa. 2019).

---

282 (1981)) (quoting *Birl v. Phila. Elec. Co*., 402 Pa. 297, 167 A.2d 472, 476 (1960) (internal quotation marks omitted)). "But the statement must do more than merely embarrass or annoy the plaintiff; it must provoke 'the kind of harm which has grievously fractured [one's] standing in the community of respectable society.'" *Graboff*, 774 F.3d at 136 (quoting *Tucker v. Phila. Daily News*, 577 Pa. 598, 848 A.2d 113, 124 (2004)). Grier has failed to plausibly allege that the statements were defamatory, and he does not allege who made the statements, to whom they were published, or how his reputation was harmed.

"[A] prison guard acts outside the scope of his duties" thereby vitiating immunity "when he or she uses deliberate and unjustified force on an inmate totally divorced from any need of the officer to exert control over the prisoner." *Minor v. Kraynak*, 155 A.3d 114, 124 (Pa. Commw. Ct. 2017) (internal quotations omitted); *see also Justice*, 208 A.3d at 1070 ("[I]t is simply not the law that an employee's use of force is within the scope of employment regardless of whether the force is reasonable or carried out for an improper motive."); *Miller v. Nowakowski*, No. 23-00267, 2025 WL 1938692, at *4 (W.D. Pa. July 14, 2025) ("[C]ourts in this circuit have held that a correctional officer is not acting within the scope of his or her employment, and thus not entitled to the protection of sovereign immunity, when they assault an inmate without justification." (internal quotations omitted) (citing cases)). Although Cavalari deployed his OC spray while Lewis and Grier were in a physical altercation, the facts as alleged and taken as true indicate that Lewis was the aggressor and Cavalari deployed the OC spray directly onto Grier's face, later apologizing to Lewis, telling Lewis that he wasn't trying to spray him. (Am. Compl. ¶ 98.) Accordingly, there is a question as to whether Cavalari was acting within the scope of his employment for purposes of obtaining sovereign immunity. Since the Defendants did not address this point, they have not carried their burden of establishing that they are entitled to immunity at this stage of the litigation. *See, e.g*, *Witters v. Smith*, 736 F. Supp. 3d 238, 249 (M.D. Pa. 2024) ("Courts routinely hold that where excessive force is in question, so too is whether that use of force fell within the scope of the defendant's employment." (internal quotations omitted)).

## V. CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss in part and will: (1) dismiss Grier's due process claims as to all Defendants; (2) dismiss Grier's deliberate

indifference claims as to all Defendants based on an alleged failure to protect Grier prior to the June 23, 2025 altercation with Lewis; (3) dismiss Grier's deliberate indifference claims as to Defendants Houser, Wenerowitz, Radziewicz, Fotiou, Brown, Bickell, and Harry based on their alleged failure to protect Grier following the June 23, 2025 altercation; and (4) dismiss Grier's state law claims of negligence and defamation. Defendants' Motion to Dismiss will be denied as to Grier's state law claims of assault and battery against Cavalari. In summary, therefore, Grier's Eighth Amendment claims of failure to intervene and excessive force, and his state law claims of assault and battery will proceed against Defendant Cavalari. Grier's Eighth Amendment claims of deliberate indifference based on a failure to protect him following the June 23, 2025 altercation will proceed as to Defendants Terra, Neally, Gery, Hensley, Durand, and Wynder only. An appropriate Order follows.

**BY THE COURT:**

**/s/ John Milton Younge**

**JOHN M. YOUNGE, J.**